Case No. 20-5314, et al., F. Scott Bauer and Jeffrey T. Clark v. Federal Deposit Insurance Corporation, et al., Southern Community Financial Corporation, et al., Mr. Stephens, Freddie Appellant's FDIC, et al., Mr. Grady, Freddie Appley's F. Scott Bauer, et al., Mr. Sorensen, amicus curiae. May it please the Court. Duncan Stephens of the FDIC, arguing on behalf of all the defendants' appellants, and Mr. Paul Son, who represents the bank defendants, is in the courtroom. The FDIC had the authority to address the Golden Parachute applications that were submitted to it under the plain text of the statute and the regulations. Common sense, likewise, supports what the FDIC did here in addressing the Golden Parachute applications, because the FDIC had the information it needed to resolve the applications, and it would benefit no one for the FDIC to withhold a decision pending the completion of the North Carolina litigation. Should the Court reach the merits of this issue? We believe that the FDIC correctly found that these were Golden Parachute applications. Do you think we should reach the merits, hypothetically, if we were to disagree with the district court on its ruling? Or should we remand? I think the Court has enough information. It is a matter of law. There are no factual disputes. The parties cross-moved for summary judgment below. I don't think there are any matters of fact that have to be resolved at trial. So I think the Court has enough information, but we have no position as far as whether it's better for the Court to resolve at this point. The FDIC doesn't have a position on whether it would prefer that we go ahead and decide it now? No, Your Honor. The FDIC has given – we submit all the – the Court the information it needs to address the question, but does not have a strong view on – if the Court believes that remand is preferable, wants the district court to develop the issues further, that's not something that the FDIC is going to – is going to be very concerned about. So we think – so starting with the authority issue, there are several features of the statute that we think support what the FDIC did here. First, the statute covers agreements and not simply payments, not simply golden parachute payments. And that's significant because many agreements are expressed not in terms of fixed dollar amounts, but in terms of variable amounts, multiples of compensation, payment of life insurance premiums, payment of health benefits. Those – and given that – given that Congress gave the authority to resolve agreements and not simply payments of definite dollar amounts, we think that supports the idea that Congress was not limiting the FDIC to specific amounts. And even if the statute didn't include agreements within the definition of golden parachutes, it includes payments without any kind of temporal restriction. It doesn't – the FDIC can address future payments, anticipated payments, just as well as it can address present payments as long as the information it needs – as long as the information it needs is all presented. And the fact that Congress said the FDIC can make limit by regulation or order any golden parachute payment, it defines golden parachute payment as any payment or any agreement, and then payment is defined as any direct or indirect transfer of any funds or any assets, any, any, any. Congress clearly meant to cast a broad net in this statute, and we think what the FDIC did is well within that broad scope. The FDIC has an explicit procedure for parties to come and ask for authorization to make what has been characterized as a golden parachute payment, right? They can try to obtain FDIC approval. That's the sort of step one, step two that counsel for Mr. Bauer – Mr. Clark referenced. Does the FDIC have a procedure for parties to come and ask the step one question? I think not. Everyone tried to shovel this into the – what I'm going to call the step two question. Your Honor, there isn't a separate procedure. The – in Section 359.6, the FDIC simply says, for filing requirements, consult Section 303.244. So, what the FDIC – What authority or what basis was the FDIC making a step one ruling here? How do parties know they could even ask that from the FDIC? Is there just an established practice of doing this? Right. So, if the party – if a party wants to know what to do, given that if it's not seeking a full consent, it's simply seeking the up or down on whether it's a golden parachute payment, if the party calls up the FDIC, the FDIC will say, you know, look, submit the information you have, and if we need more information, we'll ask for it. So, while it's not specifically set forth in the regulations, what the FDIC does is interpret Section 303.244 broadly enough to encompass what Bauer and Clark call the step one phase, and if the FDIC needs more information just for step one, it will ask for it, and if it doesn't need more information, the FDIC will proceed to a decision based on the information submitted. So, in our view, Section 303.244 gives the FDIC the flexibility to ask for more information and the flexibility to proceed on the information it does receive, but there is not a separate set of filing requirements. There isn't a separate established procedure. The FDIC also said in its decision that the FDIC has consistently maintained that golden parachute payments by a healthy acquirer are subject to the golden parachute rules, but there were no citations when you said that they have consistently maintained that. Can you tell me where I can find that? Sorry, Your Honor, can you repeat the question? Your brief says that the FDIC's decision here says that they have consistently maintained that golden parachute payments by a healthy acquirer, like if it were capital, are subject to the golden parachute rules, but there were no citations when you said they have consistently maintained that. So where can I find that the FDIC has consistently taken that position? I understand the rationale of it, I just would like to know where they have decided that before. Well, I think the BBX capital case from the 11th Circuit is a good example of that, because what happened in that case, similar to this case, was that a tribal institution was acquired by a healthy institution. The healthy institution acquired and inherited with that acquisition the troubled institution's severance obligations, and the executives there argued, well, the payors here would be healthy institutions, so the golden parachute provision doesn't apply, and the 11th Circuit said no. The focus of the golden parachute statute is obligations incurred by troubled institutions, and the fact that they might hand off their obligations to a healthy institution doesn't change the applicability of the statute. The 11th Circuit explained that if that were the case, it would be fairly easy to get around the golden parachute statute just by creating some other shell companies, some non-banking institution, something that is outside the scope of troubled institution parameters, and presto, you have something other than a golden parachute. So the 11th Circuit was pretty clear in BBX that when there is a healthy acquirer, it doesn't change the applicability of the statute if it kicked in for a troubled institution in the first place. The decision also said that they have consistently treated court claims arising out of claims disputes over golden parachute payments as covered by the prescriptions on golden parachutes, but again didn't have citations. Where can I find citations to that? I think the Harrison case, also from the 11th Circuit, is a good example of that because in Harrison, the 11th Circuit... You don't have, like, FDIC decisions. You're just going to point me to a case for each one of these, but you said consistently, so I had thought there would be a body of, like, FDIC case law on these two propositions. You're talking about as positions they have taken in litigation. Right, so the positions that the FDIC have taken in litigation follow on from decisions by the FDIC on the administrative level. So while the FDIC's golden parachute decisions are not... There isn't a public body of them, so it's difficult to point to the decisions on the administrative level. What the FDIC has done is reflected, at least in a couple of instances, on the appellate level. And in Harrison, there was a wide variety of tort claims presented. A settlement agreement was entered into, or at least proposed, to resolve the tort claims, and the 11th Circuit found that all of the claims reflected in the settlement agreement, including the tort claims, including statutory tort claims, were covered by the golden parachute statute. So that is one example of courts deeming... Let me ask you a question that goes to whether I completely understand your position here. Is it your position, the FDIC's position, that it didn't need to know the amount of a proposed payment or what the potential was, because this was a troubled institution, and these two individuals, officers who were involved, were responsible for putting the bank into that state, and therefore, no matter what the payment would be, we would reject that? Yes, Your Honor, that's correct. Because the regulations, Section 359.4 of the regulations, make the responsibility issue a threshold factor that comes before the discretionary analysis that's in 359.4b, which would include the cost. Now, you've also framed it up in terms of the corporation waiving requirements with respect to a bank coming to them and asking for approval. Did you make a waiver argument in the district court? I can't find that you did. Your Honor, when the district court asked for a briefing on this issue, I don't believe we raised that waiver point. But it is a secondary point, because we don't think there's anything... It's not necessary to reach the waiver point if, in fact, there were no requirements on the FDIC to waive, and we think that's the case here, given that under the 359.4 analysis, you never get to the cost issue, and 303.244 doesn't in any way constrain the FDIC. I have just one more question for you, and that is, Mr. Bauer and Clark say that in their North Carolina litigation, they have raised a distinct claim, not about collecting gold and parachute payments, what you characterize as gold and parachute payments, but about collecting, that they would have, absent capitalist interference, they would have been able to just continue their employment and continue getting a salary. Not any of the terms from the change in conditions. Right. Just, we wouldn't have been fired. I could have kept working, kept at my job, maybe retired in three years. Okay. Where does the FDIC explain how that claim constitutes a gold and parachute? A couple points, Your Honor. First, that theory, that they would have continued as employees of Capital Bank, wasn't presented to the FDIC. It wasn't in the application, so you will not find it in the FDIC's final determinations. So is that aspect of the North Carolina litigation not displaced by your decision, that claim can go forward? In North Carolina? I mean, they can all go forward, I guess. It would be a pointless thing. Sure. But you're not saying, and say they won damages for the equivalent of two or three more years of salary, just salary, that they would have had because they would have continued employment, whatever a jury finds the amount is. That would not be covered? Or the FDIC just hasn't taken a position on that claim? Well, the FDIC didn't take a position on the administrative level. Now, we've suggested in our briefs before the court that it wouldn't change the gold and parachute analysis. And the reason it wouldn't change is that… Does Chenery allow you in the brief to make that decision for the FDIC? Sorry, say it one more time. Does Chenery allow you to make that decision for the FDIC in your brief? On an issue that wasn't presented to the agency, I don't think Chenery is going to speak to that. I don't think Chenery is going to foreclose the agency's… So you're now trying to add, the brief would be adding an aspect of decision that just wasn't there. I agree, Your Honor, but under the circumstances, I think Chenery allows an agency enough flexibility to respond in litigation to new theories presented in the litigation. But I do want to come back to Your Honor's point because if Bauer and Clark have different theories that were never presented to the FDIC in the first round that they want to file another gold and parachute application about, they can do so. We have not told Bauer and Clark, this is it, you can never come back to us. All the FDIC did was address what was presented to it, and if this theory wasn't part of it, they can seek a gold and parachute determination as to that theory. The corporation says that the bank, whichever one it is, cannot make a payment because of our gold and parachute rules, right? What if the North Carolina court says you are hereby ordered to make a payment to these two individuals? What do you do then? We would encourage the bank to appeal the judgment of the state court, but it is our view that the supremacy clause would prevent the bank from making a payment that is forbidden by federal law and notwithstanding that a state court feels otherwise. Do you have a litigating authority to seek an injunction? To seek an injunction directly against the court? Against the bank. We certainly could do so. I don't know that the question has ever arisen of the FDIC bringing its own suit to enjoin a bank from making a gold and parachute payment. I guess what I'm getting at is that your decision here is not something that voids the state court litigation. You don't have any authority to tell the parties that they can't go forward with their case, right? Correct, but the bank defendants could, and we think it would be a complete defense to the claims in the litigation that the FDIC has said you can't make these payments. That would be illegal. That is a defense under state law that we think would carry the day. There's an ancient doctrine. I can't remember the last case that was decided. It's called primary jurisdiction. Are you familiar with that? I've encountered it, Your Honor, though it's been a while. If a federal agency has the primary jurisdiction to regulate a particular activity, and there's a lawsuit going on, then the court, after a proper motion, refers the matter to the agency. It's much more complicated than that in a nutshell is what it is. Right, and it does sometimes happen, as here, that there is state court litigation simultaneous with the FDIC's gold and parachute determination, but I don't know that the issue has arisen of coming into direct conflict in that way. Haven't they stayed in the state court litigation? Yes. Okay, so the state court has sort of done something like that by staying in its litigation pending the FDIC decision. Right, and we think the state court, by entering the state, recognizes that the FDIC's determination is going to be significant here, and so it's certainly everyone's hope that this sort of conflict wouldn't arise. Any more questions? All right, thank you very much. We'll give you a couple minutes for rebuttal. Thank you. Thank you. Your Honors, I'm Chris Gravey. I represent Scott Bauer and Jeff Clark. Let me first say that we are obviously requesting that the court address this matter on the merits. I'm pleased to hear the FDIC doesn't oppose that, and we hope the court will take this matter up on the merits. I'd like to speak directly, if I may, Your Honors, to the questions that were asked on the bench during Mr. Stevens' argument. The Congress, the first assertion Mr. Stevens made, Congress intended to cast a broad net. It didn't intend to cast it that broadly because it regulated only gold and parachute payments, and so ipso facto, all payments that are not gold and parachute payments are not within the scope of the regulation, and so unless the damages that we're seeking in the state court action would qualify as gold and parachute payments under the strict definition in the regulations, they're not within the scope of the FDIC's authority to prohibit, and that's what's going on. Can I just back up one thing on the question of the district court's decision here? You don't, I just want to confirm, you don't complain in any way that you were injured by the decision of the FDIC to go forward and make a decision without that particular piece of information about the amount in dispute? I'm not sure I follow your question, Your Honor. You don't claim, you don't disagree, I'll try it again. Your position is that you fully agree that the FDIC could go forward and decide the applications that were submitted to it without having the precise amount of money in dispute before it. We do. We believe that the amount requirement is a requirement of 303.244, which is an application to make a payment, and as the amicus argued better than I did, what was going on here was not an application to make a payment. It was an application to prevent one, and so this was strictly constrained to the step one inquiry. Are these damages that we're seeking in the state court action, do they implicate the Golden Parachute rules at all? Are they seeking Golden Parachute payments? And so we believe the FDIC. So you weren't injured by the FDIC's willingness to go forward and decide the matters that were submitted to it? We are, no. But just declare, oh, go ahead, finish your sentence. We are not injured by the fact that the FDIC made its final determination without knowing the amount. And when you say that, do you say you're not injured by the step one decision or also the, with your great phraseology, also their step two decision? They also made a discretionary decision. We are not challenging the discretionary decision. We made that clear in the district court. And I believe Judge Leon cited us for changing course to use his phrase that we are not challenging the discretionary determination. We are not challenging the discretionary determination. You're all about step one. We're all in that these are not Golden Parachutes. All right. Just wanted to make sure I was clear on that. Go ahead. Let me address some of the case law that Mr. Stevens cited. Your Honor, Judge Millett, I believe you asked, what's your citation for the assertion that the FDIC has consistently maintained that healthy acquirers are subject to the rule? What I would start with there is where have they said it in the regulation? Because it's nowhere in the regulation you'll find the word, you'll not find the word successor, you'll not find the word acquirer anywhere in the regulation. You'll also not find it in any of the official guidance from the FDIC. And so if you look at the Financial Institution Letter, which is in the Joint Appendix, Financial Institution Letter 66-10, which is JA51, you can read that entire document and you'll find nothing about healthy acquirers or successors. In fact, when the FDIC in its official guidance is telling the world what these regulations govern, you just have to look at bullet point number one in their guidance on golden parachutes where they begin with the highlights. And bullet one is golden parachute payments refer to amounts paid by troubled entities to an institution-affiliated party that are contingent on the IAP's termination. Bullet two, the FDI Act and its implementing rules preclude troubled institutions, those rated composite four or five or meeting other criteria, from making golden parachute payment except as provided by the rules. Nothing about successors. Well, it covers, right, it does cover affiliated holding companies. Correct. And Capital Bank was a completely unaffiliated third party and doesn't fall within affiliated holding company. And so it also puts the FDIC's interpretation at odds with the Treasury rule governing TARP payments, and Southern Community also had received TARP money where Treasury in the interim final rule, and we cited this in our briefing, makes clear that healthy acquirers are not subject to the golden parachute restrictions after acquisition, nor are the highly compensated employees subject to them. And so this rule puts the FDIC directly at odds with the philosophy, anyway, of the Treasury Department's corresponding rule. Well, they can coexist. You're not suggesting an actual conflict. They can't. I'm not saying they have to agree. Sometimes different agencies make different decisions. Understood, Your Honor. The BBX Capital case, this was not a case where a successor was responsible for a payment. That opinion, although that opinion is, it's a little bit opaque, I will say, but that opinion is clear when you dig into it and if you look back in the record, that it was BBX Bank Corp., a troubled institution, that agreed to make those payments. It was not BB&T, which was the healthy acquirer. BB&T had no contractual obligation to make any payments to these executives. And so that was a case where a troubled institution was going to be responsible for making payments on a change in control. That's what the golden parachute rules are about. But here you had a provision that said Southern, the troubled company, had an obligation to make sure the successor, Capital had a contractual obligation to make sure the successor assumed that responsibility. Correct. Now why would the golden parachute provisions not apply to something like that? Well, for numerous reasons, Your Honor. The first is that this is a payment that is not required to be made by a troubled institution. And so the purpose of the rules to protect and preserve the assets of troubled institutions simply aren't implicated by a healthy institution making payments. Second, this was a single trigger change in control. It doesn't fall within the contingent on or by its terms payable on or after termination, which is a definitional element of the rule. These single trigger change in control payments were due from the successor simply by the change in control. There was no termination required for these change in control payments to be triggered. And so for those two reasons, this is distinct from a situation where a troubled institution has an obligation to make a change in control payment prior to acquisition. None of the assets of Southern Community Bank were implicated here in the least. This was all the healthy acquirer. Let me speak briefly to some of these other issues, Your Honor. The Harrison case, you asked about tort claims. You said, what about the independent tortious conduct of Capital Bank here? We have claims for tortious interference with contract and tortious interference with prospective advantage. What about those claims? Those are targeting the independent conduct of an institution that's never been troubled and doesn't implicate the assets of a troubled institution. And they say, well, we consistently treat tort claims in Harrison. What the executive had done in Harrison was simply to assert a basket of claims against the bank, everything from breach of contract to civil rights violations, intentional infliction of emotional distress. They threw the kitchen sink at the troubled institution. And the troubled institution proposed to pay a million dollars of its troubled institution money to the executive. And the FDIC prohibited that. Fine. It's prohibiting payments, Golden, it's prohibiting payments by a troubled institution. And the fact that the executive repackaged its contract claim against a troubled institution as a tort claim made no difference. That's fine. That's not this case. This is a claim against a third party, a never troubled institution based on its own independent tortuous conduct. That's it. There's nothing in the language of the regulation or the statute that could possibly be read to immunize healthy institutions from liability for their own tortuous conduct. Finally, as to the waiver argument, it's just simply not accurate. We, in our letters to the FDIC, we made clear, well, first of all. When you talk about waiving the straight up employment claim, what waiver are you talking about? They claim that we've waived the argument that we would have become employees of Capital Bank had you performed. You just didn't present it to them. They weren't ruling upon that claim. But we did present it to them is what I'm saying to your honor. Do you think the FDIC is ruling upon that or not? I believe the FDIC so fundamentally misunderstood what our claims are about that it should have ruled on it. It was before the FDIC. But one of the errors the FDIC made was simply assuming, oh, you're looking for termination payments from a troubled institution. And it doesn't matter that they were acquired later. This is Hill v. This is Hill v. Bancorp, the end. And they simply didn't take into account all the information before them, including the actual language of the tortious interference claim. This is J.A. 129, where we point out that. But for the tortious interference, the agreements would have continued in effect indefinitely at Capital Bank, not intentionally and wrongfully induced Southern community to terminate. That's part of our tortious interference claim in our letters. J.A. 129, your honor. I'm sorry. Is that 115? The agreements would have J.A. 129 is the fourth claim for relief in the amended complaint. Paragraph 115. Is that what you were reading? Paragraph 115. Yes, sir. I would also point out that in order to be sure that the FDIC understood what we were talking about, we actually put in. This is at J.A. 352. We actually put in all caps, boldface print in our letter because we understand that this is not self-evident. This may not be their daily fare. We put into our letter, quote, Southern community breached the agreements by failing to ensure that Capital Bank assume and agree to perform the agreements, not for failing to make change in control payments before the merger closed. We also continued on and said when entering, and this is in the same letter, your honor. It may carry over into the next page. But in the same letter, we said when entering into the merger agreement, Southern community's alternatives were, A, require that Capital Bank assume and perform as required by the contracts. B, if Capital Bank refused to assume and perform, to forego the deal and honor the contracts, that is, they will remain employees of Southern community and continue on, which, by the way, was rapidly recovering, had gone from a loss to profitability. And that's why they were such an attractive target for Capital Bank. But the argument that we never said anything to the FDIC about that theory is simply wrong on the facts, and it's revealed by the claims relief in the complaint and by our letter to the FDIC. Your honor, if I could have just a couple of minutes for rebuttal to the amicus. You get a couple minutes for rebuttal. I'm sorry. I didn't mean to cut off any further questions. I think there's no more questions. Thank you very much. Thank you. Morning. May it please the court, Adam Sorenson on behalf of the court committed amicus. I'd like to begin with the, the authority question under the statute and go back to your honor's question about what exactly is the FDIC's authority for claiming that all legal claims fall under the definition of gold and parachute payments. And I think it's important to draw the same line as you, Adam. I think you brought a distinction specifically about the Harrison case that my friend mentioned. In that case, there were no claims filed. It was a settlement agreement for a definite amount, $1 million, presented to the FDIC as part of an application under this very reticulated statute. And the FDIC was able to determine by reading the settlement agreement, the proposed terms, and the amount that this was obviously, and it was an agreement because it was proposed that they would pay this, and that it was in the nature of compensation. And I think that's really the key language in the statute, that to know whether something falls within the ambit of the FDIC's authority in this area, we have to know whether it's a payment or agreement in the nature of compensation. And I think that's really the critical information that's missing here. This is not just a box that was left unchecked on the application. The missing information about the payment, it's the cost and impact on this institution could not have been provided at this stage in the litigation. And I think that the district court correctly recognized that further development of the plaintiff's theories of liability in the state court or some form of settlement agreement would have provided the FDIC the information that they needed to make this threshold determination of is this an issue that is within their authority to begin with. Why would we conclude that under these circumstances, the FDIC might not have had enough information to approve the payment, but it did have enough information to reject the payment? So I think in order to reject or approve the payment, Your Honor, it would have to know whether it was a golden parachute payment. So the statute gives them authority to limit or prohibit golden parachute payments. And to know whether it falls into that bucket or not, I think they need a few basic pieces of information. They need to know the amount and they need to know what is the nature of the liability to determine whether it's in the nature of the compensation. So I definitely think that they could have said, well, we need more information. Or they could have said our general view of this kind of liability is that it falls under the statute. But that's not what they did. They said that they say they say exactly what Judge Randolph posited earlier, which is we don't need to know the amount because our determination is that a payment in any amount would be inappropriate. So I think that would answer what the plaintiffs called the step two question, which is if this is assuming that this is a golden parachute payment, would we allow it? But I think that the FDIC has long recognized, for example, that statutory claims such as discrimination claims are simply not payments or agreements to make payments or give rise to them within the meaning of this particular statute. So I don't think that they would claim that if they were presented with a discrimination claim, like in Sterling Savings Bank case, that they could offer any opinion on whether that's allowed or not, because it's simply not the kind of claim that falls within their authority. And it wouldn't matter in that case. Why would amount, right, amount wouldn't matter there? And if amount wouldn't matter here? I get why some other things, but I don't know why you have to know the amount, know whether something is in the nature of compensation. So I think there are two answers to that question, specifically to the nature of compensation. I think the uncertainty over the amount is fundamentally related to the uncertainty over the nature of the claim. So, for example, can you say that again? I didn't hear. So I think the uncertainty over the amount is related to the uncertainty over the nature of the claim and whether it's in the nature of compensation. So in, for example, in Von Rohr, the Eighth Circuit case, which the FDIC points to as sort of an example of where you could have a claim that has not been reduced to judgment or settlement. That was a simple contract claim for a known amount. And I think if you have a simple claim in the nature of compensation, you're going to know in advance what the amount is because it will be apparent from the compensation agreement. The uncertainty here and the reason. I'm not sure that's true at all. I mean, first of all, would the jury have been bound to award that precise amount in the Von Rohr case? So I don't know that they would be bound to award that exact dollar amount. But I do think that the application itself would have specified that that was the amount at issue and that was what was being sought. And I also think it would have been clear that the basis for that amount was compensation itself. So in many of the cases that the FDIC cites or the proposition that, well, we'll never know an exact dollar amount, almost all of those cases do actually have a specific dollar amount. And those that don't have a calculable amount. So they'll say, you know, three years' salary, and we know that the base salary is $200,000. And it's not to say that the FDIC needs to know. They had asserted amounts in this case. It was $4 million-something for Mr. Bauer and I think $2 million-something for Mr. Clark. That was submitted. That was before them. The FDIC had numbers in front of it. So that figure was in the application. It was not in the decision. And I do not read the decision. Why did it have to be in the decision? It's a different thing to say now because the rule only requires that it be in the application. Fair, Your Honor. I think that the application was not limited to those amounts and the decision itself was not limited to the amounts. So what the application asked for and what the decision delivered was a statement that all claims arising out of this state court suit, be it statutory, tort, contract, or otherwise, would inevitably give rise to prohibited golden parachute payments. And I think that was just a premature assessment at this stage before the theories evolved. It was premature because the numbers in there might be debated. The numbers that were provided, the amounts of them. I don't understand how the provision of those numbers made it premature. One might imagine other arguments for why it was premature or not. I'm not going to have this particular thing that the district court was focused on makes a difference by itself. So I think that the amount is relevant not just because it speaks to the nature of these claims. It's also evident that it's the FDIC and Congress considered it necessary to give a full evaluation. So in the statutory factors that Congress deemed relevant, this consideration, they asked the FDIC or gave it authority to consider whether these payments would be reasonable. Is your position more focused on the fact that this is litigation claims? Say it's not litigation and Southern wants to know whether it can make a payment. It's going to terminate these guys. It wants to know if it can, when it does make this payment under the terms of the contract or even hypothesize another case where it's just crystal clear. If I'm terminated by you, while our business is in a troubled condition, you have to give me two times the salary of the highest paid officer in the company. We're not in litigation. And so the troubled entity comes to the FDIC and says, is this a golden parachute payment and can we make it? But just on the step one question, would this be a golden parachute payment? Is it your position they couldn't answer that without first having someone tell them what two times the highest paid salary is in the company? No, Your Honor. I think that if the amount is fundamentally calculable, then that's entirely. Because it's calculable as opposed to on its face. It's in the teeth of the golden parachute and by its terms. So I think, well, I think that situation would be different in a few different respects. First, I don't take the district court's opinion to hold that the FDIC cannot give guidance on its view of the law or advise parties on its view of the law. I think that the FDIC here relied on and used a very particular font of authority in issuing an application decision under Section 303.244. And I think we know from that section and the. What more did it do than tell the parties, here's our view on these? People can debate them, but here is our view on the status of these claims. It didn't order the trial court to do anything. It didn't direct parties to dismiss their litigation. So what more did it do here? It did not. It denied the application under 303.244 and sort of made a final determination that no matter what the party submitted, that none of the claims in this suit could give rise to a permissible. But I think that's just provided their opinion. Maybe it was more definitive, but covered more territory than people can debate where they should have. But it just told them their opinion. I respectfully would just dispute the premise. I don't think it was merely offering opinion. I think it was relying on this particular font of authority under 302.244 with these particularized requirements. Aside from the portion of the North Carolina complaint seeking attorney's fees, what other parts of the complaint or claims are unrelated to the payments that these gentlemen claim they were entitled to upon leaving the bank? So I want to be careful in staking out my position here. I do not take the position that the plaintiffs do that their claims will certainly not give rise to prohibited payments. And I also don't take the position that I read the FDIC to take. I don't take the same position that plaintiffs do, that their complaint will necessarily never give rise to prohibited payments. And I also don't take the position that the FDIC does, that it will inevitably. I think I would just want to be careful in couching my answer in that I think there's uncertainty. And I can point you to the particular issues that I think have given rise to the answer. So your position is that the payment has to be made before the FDIC can forbid it? No, Your Honor. I think reading the statute and regulations, an agreement would not require money to change hands. You could have an agreement to make a payment. But I do think that there has to be a particular payment proposed whether or not it has yet changed hands. There has to be a jury judgment. There has to be a judgment from the jury? No, Your Honor. I think a settlement agreement would constitute an agreement to make a payment. So if they don't settle, the FDIC could do nothing until there's a judgment from the jury? It's not that they could do nothing. I think that if they are not presented with a concrete proposed payment, that the statute has not conferred them authority to act in those circumstances. But also I think that you don't have to go that far because that's really not this case. Here we're not presented with a situation like Von Rohr where you have one simple contract claim for a definite known amount. Here we have, I think, a lot of uncertainty. And to Judge Randolph's question about what exactly is going to be the nature of liability here. Are there going to be damages or tortious misconduct which is unrelated to direct enforcement of the compensation terms of the contract? I don't read those answers to be clearly answered by the complaint. Do you agree with the district court that there's something amiss by the FDIC rendering an advisory opinion? FDIC is not bound by Article 3 of the Constitution. There's nothing wrong with that, is there? No, and I didn't read the district court to be saying that the FDIC could not give parties guidance on its view of the law. I think what it meant by advisory opinion is that there are certain pieces of information that are just fundamentally unknown. We don't yet know the amount of any payment. We don't yet know the legal basis for recovery. And I read the district court to be saying that because those claims are hypothetical, that is what renders this what he called an advisory opinion. Not that the agency can't somehow offer the party's guidance. Colleagues don't have any further questions? All right, Mr. Shorenson, you are appointed by the court to defend the judgment of the district court, and we are very grateful for your assistance. Thank you, Your Honor. Mr. Stephens, we'll give you two minutes. Thank you, Your Honor. I'll do my best to be brief. Responding to Mr. Gravey, just a couple points. It was the change of control that, in BBX, the change of control terminated the executive's affiliation with a troubled institution. Here, the affiliation was nominally terminated a little bit before, about eight days before. But either way, it comes to the same thing. Their affiliations with Southern Community, even if the terminations didn't happen eight days before, were terminated when Southern Community ceased to exist. The obligations were still those of Southern Community, of the troubled institution. And BBX presents essentially the same situation as this case. It seems like they sent their complaint, and they did present this plain sort of employment, breach of the employment contract, the right to keep working as an employee claim. It was in the papers before the FDIC. So are you here representing that the FDIC did not make a decision on whether that particular claim, if credited by a jury, would constitute a golden parachute or not? I want to be more precise on that, Your Honor. What was not presented to the FDIC was the theory that they would have become employees of the successor institution, which is a different theory. It's presented in the briefs before this Court, but it was not presented to the FDIC. What was presented to the FDIC was the idea that absent Capital Bank coming along and interfering with this relationship, Southern Community would have stuck around, and they would have continued being employees of Southern Community. So that's a different theory. And the idea is Southern Community would have continued to exist. They would have interfered with their continued employment. And everyone knew that Southern was going to get absorbed by Capital, and so they would have just gone on like I assume a lot of other Southern employees did after the merger and just keep on working. I don't think anyone thought they were going to continue as Southern employees. Southern employees, Southern ceased to exist, did it not? Yeah, and their theory is that they would have continued being Southern. And as I understand it, that Southern would have continued to exist, so that there wouldn't have been a merger. But what was not presented to the FDIC was the idea that they would have become employees of the successor institution. And that's why I'm saying that the theory was not presented to the FDIC. Is the FDIC decentralized? I'm sorry? Is the corporation decentralized? Decentralized? Right. Can decisions binding decisions over the signature of the FDIC be made by a region? Yes, they can. And where does that authority come from? Well, the FDIC board has executed delegations of authority that in many cases reach the regional directors. So here the Division of Risk Management Supervision has authority over Golden Parachutes, and specifically the regional director within the RMS division. That's why I asked whether it's decentralized. Some agencies are not. The only binding agency decision has to come out of their headquarters in Washington. But this one came out of the region, right? It wasn't even the regional director that made it, it was an assistant, wasn't it? I think there's been a sub-delegation by the regional director to an assistant regional director. But the authority comes, it came from the board originally, but the FDIC's board has delegated this authority. Is that in CFR, the delegation? The delegations are not in CFR, but they are on the FDIC's website. And I think there's a footnote in our brief that explains the delegation issue. Okay. I see I'm out of time, so I'll be extremely brief. As to the MUCUS's argument regarding needing to know the amount, it's simply not definitional in the statute. The statute addresses payments. It doesn't make a specific payment for a specific amount part of the definition. And I guess I should clarify, because right at the outset, I talked about reaching the merits of this case. And I talked about the FDIC's position. I suspect the banks would like very much for this court to reach the merits of the Golden Parachute issue. And since the banks are not arguing separately, they haven't had that opportunity. But I know that they have been litigating this for many years. And they would prefer to not make it a 20-year saga when it's already been almost 10. Okay. Do my colleagues have any further questions? Great. Thank you very much. Thank you. All right. Mr. Raby, we'll give you two minutes as well. Let me just take up some of the issues that have come up in the preceding two arguments. On the issue of substantial responsibility, I want to be clear that in 359-4, substantial responsibility is only relevant when an institution is applying for permission to make a payment. It's one of the factors that the FDIC has to take into account. It doesn't create, it doesn't transmute a non-Golden Parachute payment into a Golden Parachute payment. And so the FDIC is finding that we believe incorrect, that Mr. Bauer and Mr. Clark were substantially responsible. It has nothing to do with whether any of the payments at issue here are Golden Parachute payments. Second, the amicus said, I believe I got this right, if the number is calculable, it's okay. And as I read that, there needs to be some measure of damages available, some way to calculate it. And that's true here. There are measures of damages under North Carolina law for breach of contract. You're entitled to be put in the position you would have been in had the contract been performed. And it's the same with tortious interference, although our law is less well-developed on measure of damages. You're entitled to any actual damages resulting from the tortious interference. And so they are calculable. And there's a difference between calculable and calculated. This goes to the issue of bifurcation as the example that I raised in our briefing, that this is no different from a determination of liability and then a separate subsequent determination of actual damages, the number down the road. Your Honor, this is a final word. This court and the Supreme Court have been clear that an agency is not entitled to stretch its regulations beyond their language. That the FDIC could pass regulations governing these sorts of payments that we're seeking in our state court action, and they haven't. This attempt to impose Golden Parachute rules on successor healthy institutions simply goes beyond what the language will bear. They're making a new rule without giving anyone opportunity to comment on that rule or to make any, take any position on its wisdom. And so we would ask the court to- Can I ask just one quick question? Of course. The FDIC's characterization of your claim, what I call the pure employment contract claim, is it right that it was premised on Southern, that their merger not happening and Southern continuing to exist? When I was reading it, I thought it was also that you would have continued on as employees of Capital, but that can be totally my mistake. If they had, if Southern Community had performed its contract, it would have either gotten Capital to assume and agree to perform the employment contracts. It would have, I believe Your Honor, it would have seamlessly become employees of Capital in the merger. And Capital would have been the employer under the contract just as Southern Community was the employer before. But they would have been a healthy, non-troubled employer, not subject to the Golden Parachute Rule. If the contract provision was unenforceable because of the reasons given by the FDIC, there can be no tortious interference with an unenforceable contract, can there? If the court concludes that it was unenforceable, that Southern Community was, could not have gotten Capital to assume and agree to perform the contracts, yes. I want to be clear, Judge Randolph, that we're not saying Southern Community owed termination payments when they fired Mr. Bauer and Mr. Clark. And so Capital, as successor, is responsible for those payments that Southern Community otherwise owed. That's not our case. That's the Hill case that's cited in the briefing. That's not this case. What we're saying is, had they performed, Bauer and Clark would have become employees of Capital, a non-troubled institution. Or if Capital takes a position in litigation that, well, then the merger would have been off. We wouldn't have done that deal. And then the Southern Community had performed its contractual obligations to Bauer and Clark to insist on Capital's assuming and agreeing to perform the contracts. Then they would have, Bauer and Clark would have continued on as employees of Southern Community. Thank you. Thank you, Your Honor.
judges: Millett, Katsas, Randolph